UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JOSE GIRON ESCOBAR, et al.,

    *Plaintiffs*,

v.

LOREN K. MILLER, et al.,

    *Defendants*.

Civil No. 1:23-cv-399-MSN-WEF

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion to Dismiss for Lack of Jurisdiction (Dkt. 4). Plaintiffs Jose Giron Escobar and Jordan Solis ask the Court to compel the United States Citizenship and Immigration Services ("USCIS") to adjudicate Mr. Giron's Form I-601A, Application for Provisional Unlawful Presence Waiver. Mr. Giron needs USCIS to approve this waiver so he can leave the country to obtain an immigrant visa and promptly return to his wife in the United States. But it has been more than three years since Mr. Giron submitted his application, and he has yet to receive an answer. The government moved to dismiss the complaint for lack of jurisdiction. After reviewing the motion, opposition, reply, and supplemental authority, the Court will deny the motion.[1]

**I.    BACKGROUND**

Under the Immigration and Nationality Act ("INA"), noncitizens who are married to U.S. citizens are eligible to pursue lawful permanent resident ("LPR") status. *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1). Obtaining LPR status requires two steps. First, the citizen spouse

---

[1] After the motion was fully briefed, Plaintiffs filed a Motion for Leave to File Supplemental Authority alerting this Court of the decision in *Bamba v. Jaddou*, No. 1:23-cv-357-AJT-JFA (E.D. Va. Aug. 18, 2023). *See* Dkt. 15. That motion will be granted.

must file a visa petition with USCIS. *See* 8 C.F.R. § 204.2. Second, if USCIS approves the visa petition, the noncitizen must either apply for adjustment of status, if present in the United States and eligible to adjust (8 U.S.C. § 1255(a)), or apply for an immigrant visa through the State Department (*id.* §§ 1201(a), 1202(a)). This means that noncitizens who are ineligible to adjust their status in the United States must travel abroad to obtain an immigrant visa from a consulate. *See id.* § 1202(a); 22 C.F.R. § 42.61(a).

The noncitizen must be admissible to return to the United States. *See* 8 U.S.C. § 1255(a). This means, in statutory terms, the noncitizen cannot be inadmissible under any ground set forth in 8 U.S.C. § 1182(a).

Although the statutory grounds for inadmissibility are wide-ranging, some relate to unlawful presence in the United States. Relevant here, a noncitizen who was unlawfully present in the United States for more than 180 days but less than one year during a single stay, and who then departs voluntarily from the United States before the commencement of removal proceedings, is inadmissible for three years after departure. *Id.* § 1182(a)(9)(B)(i)(I). And a noncitizen who was unlawfully present for at least one year during a single stay and thereafter departs is inadmissible for ten years from departure. *Id.* § 1182(a)(9)(B)(i)(II). The noncitizens who are inadmissible under these provisions, yet otherwise eligible to become lawful permanent residents, find themselves caught between contradictory statutory provisions: They must leave the country to obtain an immigrant visa for which they are otherwise eligible, but if they do leave, they will be barred from returning for years.

Congress gave the Secretary of Homeland Security authority to waive inadmissibility on the basis of unlawful presence for these noncitizens, however, at the Secretary's discretion, if the noncitizen demonstrates that the denial of admission would cause "extreme hardship" to the noncitizen's U.S. citizen or LPR spouse or parent. *Id.* § 1182(a)(9)(B)(v). And under 8 C.F.R. §

2

212.7(e), certain noncitizens who are physically present in the United States may request provisional unlawful presence waivers prior to departing from the United States for consular processing of their immigrant visas. If USCIS approves such a provisional waiver, then the consular officer may issue the immigrant visa, so long as there are no other grounds of inadmissibility, and the immigrant may immediately return to the United States. A noncitizen applies for this provisional waiver by submitting a Form I-601A to USCIS, which according to USCIS regulations, requires an application fee of nearly $1,000. *See* 8 C.F.R. §§ 271(e)(5), 106.2(a)(25).

The agency's express purpose behind the provisional waiver program is to "significantly reduce the length of time U.S. Citizens are separated from their immediate relatives" and to "create greater efficiencies." 78 Fed. Reg. 536, 536 (Jan. 3, 2013). The provisional waiver program "is designed to encourage unlawfully present individuals to leave the United States, attend their immigrant visa interviews, and return to the United States legally to reunite with their U.S. citizen or lawful permanent resident (LPR) family members." 81 Fed. Reg. 50,244, 50,244 (July 29, 2016).

Despite the agency's goal to "improve administrative efficiency" with provisional waivers, USCIS's processing time for a Form I-601A has skyrocketed in recent years. *Id.* In Fiscal Year 2018, the median processing time for a Form I-601A was about five months; by Fiscal Year 2023, the median processing time ballooned to forty-three months. *Compare Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms by Fiscal Year, Fiscal Year 2016 to 2020*, USCIS (Mar. 30, 2021), perma.cc/JMC5-M2PL, *with Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms by Fiscal Year, Fiscal Year 2019 to 2024*, USCIS (Oct. 31, 2023), perma.cc/8ZZA-B3EG.[2] As a result, applicants like Mr.

---
[2] The Court takes judicial notice of these facts, which are published on USCIS's website and not subject to

Giron have begun turning to federal courts to challenge their delays as unreasonable.

Mr. Giron submitted a Form I-601A on September 25, 2020, which USCIS has yet to adjudicate. Compl. ¶¶ 20-21. After he married Mrs. Solis, she filed a visa petition for him, which USCIS approved. *Id.* ¶¶ 16-17. In order to complete the immigration process, however, Mr. Giron must return to his native El Salvador for consular processing. *Id.* ¶ 18. But without an inadmissibility waiver permitting him to do so, Mr. Giron cannot return to the United States, which would cause hardship for Mrs. Solis. *Id.* ¶ 19. Accordingly, Plaintiffs ask this Court to order USCIS to adjudicate his Form I-601A so he can complete his immigration process. *Id.* at 8.

## II. ANALYSIS

A court "may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (internal citation omitted). Under the Administrative Procedure Act ("APA"), a plaintiff may ask a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Congress may divest courts from jurisdiction over these claims, however, by enacting a separate statute that "precludes judicial review" over a particular agency action that is required. *Id.* § 701(a)(1).

The government points to the enabling statute for the waiver of inadmissibility, 8 U.S.C. § 1182(a)(9)(B)(v), as a separate statute that strips jurisdiction over Plaintiffs' claims. That statute precludes judicial review over "a decision or action by the [Secretary] regarding a waiver." *Id.* There is no dispute that this text precludes judicial review of the agency's grant or denial of a waiver. But in the government's view, "a decision or action" also includes the failure to act within a reasonable period. The Court disagrees. A "decision" or "action" "regarding a waiver" does not include inaction, at least where the agency is required to adjudicate the waiver. *Id.*

---

reasonable dispute. Fed. R. Evid. 201.

4

The ordinary meanings of the terms "decision" and "action" do not include the failure to act. "[S]tatutory terms are generally interpreted in accordance with their ordinary meaning." *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013). The ordinary meaning of "action" is "[t]he process of doing something." *Action*, Black's Law Dictionary (11th ed. 2019). And a "decision" is a "judicial or agency determination after consideration of the facts and the law." *Decision*, Black's Law Dictionary (11th ed. 2019). These definitions both imply some kind of affirmative act; they do not encompass a failure to take any action. *See Saleem v. Keisler*, 520 F. Supp. 2d 1048, 1052 (W.D. Wis. 2007) ("[N]o matter how narrowly a court defines 'action,' it would require an Orwellian twisting of the word to conclude that it means a failure to adjudicate.").

In an attempt to work around these plain meanings, the government points to the APA's definition of "agency action." The APA expressly defines "agency action" to include, among other things, the "failure to act." 5 U.S.C. § 551(13). The government argues that because the APA's definition of "agency action" encompasses inaction, so too must the phrase "decision or action" in 8 U.S.C. § 1182(a)(9)(B)(v).

The government's argument is unavailing. First, the APA defines the phrase "agency action"—not simply "action"—"[f]or the purpose of this subchapter." 5 U.S.C. § 551(13). Such terms of art "are only mandatory in the context of the APA itself," just like any other statutorily defined term. *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBan at Lansdowne, LLC*, 713 F.3d 187, 200 (4th Cir. 2013). Second, in the APA, Congress intended to enable judicial review of both agency action *and* agency inaction, or delay, so it explicitly defined "agency action" to include the "failure to act." *See, e.g.*, S. Rep. No. 79-572, at 198 (1945) (noting that this definition was meant to "assure the complete coverage of every form of agency power, proceeding, action, or inaction").[3] If anything, the APA's definition of "agency action" demonstrates that when

---

[3] The government seizes on this point, arguing that "Plaintiffs cannot have it both ways" because "[e]ither the APA's

Congress wants a statutory term like "action" to mean something other than its ordinarily understood meaning, it makes that clear by expressly defining the term. Because Congress did not define the terms "decision" and "action" in 8 U.S.C. § 1182(a)(9)(B)(v), however, the Court must rely on their ordinary meanings.

Rather than import the APA's unique definition of "agency action" to a separate statute, it is more appropriate to look within the same statute for other uses of the relevant terms. *See Brown v. Gardner*, 513 U.S. 115, 118 (1994). Courts have generally understood other instances of "decision or action" in the INA to not encompass inaction. For example, 8 U.S.C. § 1252(a)(2)(B)(ii) eliminates jurisdiction over "any … decision or action" that is specified under the INA to be within the Secretary's or Attorney General's discretion. Many courts have held that this text "only bars review of actual discretionary decisions to grant or deny relief," not review of "lack of action." *Iddir v. INS*, 301 F.3d 492, 496-98 (7th Cir. 2002); *see also Gonzalez v. Cuccinelli*, 985 F.3d 357, 374 n.10 (4th Cir. 2021) (holding that courts have jurisdiction to review delay where USCIS is obligated to act even if the ultimate decision is unreviewable); *Aslam v. Mukasey*, 531 F. Supp. 2d 736, 740-42 (E.D. Va. 2008) (same); *Liu v. Novak*, 509 F. Supp. 2d 1, 7 (D.D.C. 2007) ("[A]ction and inaction are distinct.").[4]

Finally, even if the government's arguments unveiled some ambiguity as to the meaning of "decision or action" in 8 U.S.C. § 1182(a)(9)(B)(v), the statute must be read in the context of

---

definition applies to the relief they are seeking (in which case this Court lack[s] jurisdiction to consider that relief), or it does not (in which case they have no APA claim at all)." Dkt. 14 at 4. The APA provides Plaintiffs with their cause of action; 8 U.S.C. § 1182(a)(9)(B)(v) is an entirely separate jurisdictional stripping provision. There is no tension between one of those statutes having a defined term of art, or as the government puts it, "some sort of specialized, technical meaning" (Dkt. 14 at 4), and the other using a portion of that term in accordance with its ordinary meaning.

[4] The government also argues that *Patel v. Garland*, 142 S. Ct. 1614 (2022), "confirm[s]" its interpretation "is the correct [one]." Dkt. 5 at 9 (quoting *Lovo v. Miller*, 2023 WL 3550167, at *3 (W.D. Va. May 18, 2023)). To the contrary, *Patel* has no bearing on this case. The Supreme Court held in *Patel* that because a separate jurisdiction-stripping provision, 8 U.S.C. § 1252(a)(2)(B)(i), "prohibits review of *any* judgment *regarding* the granting of relief," it encompasses agency factual findings that underlie grants or denials of relief. 142 S. Ct. at 1622. But factual findings are "decisions or actions." *Patel* does not speak to whether 8 U.S.C. § 1252(a)(2)(B)(i) forecloses jurisdiction over delay cases to which that provision directly applies. And that jurisdiction-stripping provision, moreover, does not apply to inadmissibility waivers, making *Patel* far removed from the issue here.

the "well-settled presumption favoring interpretations of statutes that allow judicial review." *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 496 (1991); *see also Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1064 (2020). Although 8 U.S.C. § 1182(a)(9)(B)(v) "gives the agency discretion concerning whether they will grant or deny a waiver application," it does not "give the agency discretion *not* to process the application." *Bamba*, slip op. at 5; *see also* 8 C.F.R. § 217(e)(8) (providing that USCIS "will adjudicate" the provisional waiver application). If courts lacked jurisdiction over the agency's failure to act, the agency "could 'unilaterally impose a *de facto* moratorium' on all applications." *Id.* (quoting *Aslam v. Mukasey*, 531 F. Supp. 2d 736, 741 (E.D. Va. 2008)). It is unlikely that Congress intended to enable an agency to circumvent its directives in this manner. Contrary to the "clear and convincing evidence of congressional intent to preclude judicial review" that the government must provide to overcome the presumption, this reality makes it all the more appropriate to apply the presumption in favor of judicial review to resolve any ambiguity here. *Guerrero-Lasprilla*, 140 S. Ct. at 1069 (cleaned up).

\* \* \*

Accordingly, it is hereby

**ORDERED** that Plaintiffs' Motion for Leave to File Supplemental Authority (Dkt. 15) is **GRANTED**; and it is further

**ORDERED** Defendants' Motion to Dismiss for Lack of Jurisdiction (Dkt. 4) is **DENIED**.

It is **SO ORDERED**.

/s/
Hon. Michael S. Nachmanoff
United States District Judge

January 8, 2024
Alexandria, Virginia